[No. 6726–5–I.   Division One.   May 12, 1980.]

LEVI KNUDSEN, ET AL, *Appellants,* v. LLOYD
PATTON, ET AL, *Respondents.*

*T. Reinhard G. Wolff,* for appellants.

*Theodore Zylstra* and *Zylstra & Beeksma,* for respondents.

CALLOW, C.J.—The plaintiff, Levi Knudsen, brought an action alleging that the defendant, Lloyd Patton, made a common–law dedication of real property in Island County, Washington, for use as a park, and thereafter terminated the use of such property as a park and commenced to develop and sell it to the detriment of plaintiffs' rights as adjoining property owners. Plaintiff Knudsen demanded a jury trial, but the trial court granted the defendant's motion to strike the jury. The case was tried to the court, which found in favor of the defendant Patton. The striking of the jury demand and the sufficiency of the evidence to support the trial court's decision that no common–law dedication was established have been appealed.[1]

In 1959, the defendant Patton purchased certain real property on Whidbey Island. A portion of this acreage was waterfront property. Later that same year, Patton called the local newspaper and announced that a portion of the property would be a public park for the people of Island County. The newspaper published a story to that effect.

In 1961, Patton platted a portion of the property he had purchased in 1959 and called it "Patton's Hideaway No. 1." Additional land was platted in 1962 and called "Patton's Hideaway No. 2." The recorded plat for Patton's Hideaway No. 2 contained the word "park" in an area outside of the

---

[1]No *formal* findings of fact or conclusions of law were included in the written memorandum decision of the trial court, *see* CR 52(a)(4), nor did the parties prepare findings or conclusions. The court's memorandum decision, however, makes clear what questions were decided by the trial court and the theory upon which each was decided. While *formal* findings of fact and conclusions of law are preferred, *see* CR 52(a)(4), the lack thereof in the instant case is not fatal. *E.g., Shulkin v. Zappone,* 63 Wn.2d 201, 386 P.2d 133 (1963); *Bowman v. Webster,* 42 Wn.2d 129, 253 P.2d 934 (1953).

platted lots. Additional land was platted in 1969 as Patton's Hideaway No. 3.

In 1966, Patton platted "Patton's Beachwood Manor." It is this portion of Patton's property that the plaintiffs, as owners of property in Patton's Hideaway No. 1, allege was dedicated for use as a park. The Beachwood Manor plat was approved by the Board of County Commissioners in February of 1966 and recorded in March of 1966. There was a hearing on the proposed plat and the land was posted, as required by then existing law. In the process of platting, roads were cut, lots were staked and fire hydrants and water mains were placed in the property.

The plaintiffs were told from time to time by Patton that the disputed land would be reserved as a park for the benefit of property owners in Patton's Hideaway Nos. 1, 2 and 3, and that a clubhouse and lavatories would be built. None of this was ever done; in fact, all but lots 1 and 2 in the Beachwood Manor plat have been sold to private individuals.

The plaintiffs brought suit in December of 1977, some 11 years and 8 months after the platting of Patton's Beachwood Manor, alleging that lots 1, 2 and 3[2] of the Beachwood Manor plat were a public park by reason of a common–law dedication. Plaintiff's motion for a jury trial was stricken by the trial court. After trial on the merits, the trial court held that a common–law dedication had not been established. The plaintiffs appeal raising two issues: (1) Did the trial court err in refusing to allow the plaintiffs a jury trial? (2) Was the evidence insufficient to support the trial court's conclusion that a common–law dedication had not been established?

The plaintiffs first contend that it was error for the trial court to strike their motion for a jury trial. They argue that

---

[2]It appears that lot 3 of the Beachwood Manor plat was sold by Patton to defendant Meche in 1974. The trial court granted summary judgment in favor of defendant Meche. In view of our disposition of the two issues presented, we need not reach plaintiff's contention that Meche, as purchaser of lot 3, is bound by Patton's claimed dedication of such property.

the equitable issues were purely incidental to the legal issue of whether a common–law dedication had occurred. They assert that the entire action should have been characterized as legal and the right to a jury trial should thus attach.

The right to a jury trial in a civil case in Washington is embodied in constitution,[3] statute,[4] and court rules.[5] It has been stated that if an action is one purely legal in its essence and nature, the parties have a right to a trial by jury. Conversely, there is no right to a jury trial in a purely equitable action. *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941). Where a civil action involves a mixture of legal and equitable issues, the right to a jury trial is not clear cut. Two methods have been used where a jury trial is sought and the action involves both legal and equitable issues:

> The first [method] is to analyze a case in terms of issues and to classify the different issues in a suit as legal or equitable. The legal issues are triable by a jury; the equitable issues, by the court. In a few instances the Washington court has recognized such practice as being proper on the part of the trial courts. . . .
>
> While no cases have been found wherein this practice has been disapproved by the Washington court, it is not the common method of distinguishing between law and equity matters. Rather a case is analyzed and then classified as a whole as being either legal or equitable. If

---

[3]Const. art. 1, § 21 provides in part: "The right of trial by jury shall remain inviolate . . ."

[4]RCW 4.40.060, 4.40.070, 4.48.010.

[5]CR 38(a) provides: "The right of trial by jury as declared by Article 1 § 21 of the Constitution or as given by a statute shall be preserved to the parties inviolate."

CR 39(a)(1) provides: "When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (A) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (B) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the constitution or statutes of the state."

classified on an over–all basis as legal, there is a right to a jury trial as to all issues involved; if classified as equitable, there is no right to a jury trial on any of the issues in the case. The principle has also been sometimes stated by the proposition that if one of the main issues in an action is equitable, equity takes jurisdiction for all purposes, and there is no right to trial by jury.

(Footnotes omitted.) Trautman, *Right to Jury Trial in Washington—Present and Future,* 34 Wash. L. Rev. 401, 406–07 (1959).

The difficulty with characterizing an entire lawsuit as being either an equitable or legal action is apparent in the instant case.[6] Here, plaintiff Knudsen pleaded a legal cause of action, but sought the following relief: (1) a determination that a common–law dedication had occurred; (2) an injunction preventing the building of any more residences on the property alleged to constitute a public park; and (3) damages for unauthorized, improper and illegal development of the dedicated park. Further, Patton, as an affirmative defense, alleged that any claim of the plaintiff was barred by laches, estoppel and waiver.

As Professor Trautman noted in his 1959 article, Washington decisions generally have held that if any one of the main issues is equitable in nature, there is no right to a trial by jury on *any* of the issues presented. *Coleman v. Highland Lumber, Inc.,* 46 Wn.2d 549, 283 P.2d 123 (1955); *Ranta v. German,* 1 Wn. App. 104, 459 P.2d 961 (1969). In light of the promulgation of CR 38 and 39, however, *Scavenius v. Manchester Port Dist.,* 2 Wn. App. 126, 467 P.2d 372 (1970), held that CR 38 and 39 were intended to grant more discretion in the trial court in allowing some legal issues to be tried to the jury even though one of the

---

[6]It has been noted that this difficulty might be avoided if Washington were to follow the exclusive rule that where both equitable and legal issues are in an action, there is a right to have the legal issues submitted to a jury and the equitable issues submitted to the court. 2 L. Orland, *Wash. Prac.* § 191, at 209 (1977). *See also* Trautman, *Right to Jury Trial in Washington—Present and Future,* 34 Wash. L. Rev. 401 (1959); Note, 6 Gonz. L. Rev. 111 (1970).

parties has raised an equitable issue. *Scavenius v. Manchester Port Dist., supra* at 129.[7] Factors to be considered by the trial court include:

> (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.

*Scavenius v. Manchester Port Dist., supra* at 129–30.

Here, the plaintiff sought equitable relief in the form of an injunction, as well as damages. While this alone has been decisive in some decisions, *see Maas v. Perkins,* 42 Wn.2d 38, 253 P.2d 427 (1953); *Rao v. Auburn Gen. Hosp.,* 19 Wn. App. 124, 573 P.2d 834 (1978), under the *Scavenius* rule it is only one of many factors to be considered. The plaintiff Knudsen was also the party seeking a jury trial. The defendant Patton asserted as an affirmative defense laches, estoppel and waiver. No *affirmative* equitable relief was sought by the defendant. Some Washington decisions have suggested that where an equitable defense is asserted, but no affirmative relief is sought, the right to a jury trial is

---

[7]Early Washington decisions contain language to the effect that the trial court has wide discretion in determining whether an action is legal or equitable in nature and that this discretion will not be disturbed except for clear abuse. *See Coleman v. Highland Lumber, Inc.,* 46 Wn.2d 549, 551, 283 P.2d 123 (1955). The *Scavenius* decision adds to this language by granting the trial court greater discretion in allowing some legal issues to be tried to the jury even though one of the parties has raised an equitable issue.

> We hold that the only effect of the adoption of CR 38 and 39 is to vest in the trial court wide discretion in cases involving both legal and equitable issues, to allow a jury *on some,* none, or all issues presented.

(Italics ours.) *Scavenius v. Manchester Port Dist., supra* at 129.

not extinguished.[8] Here, it was within the trial court's discretion to view the equitable affirmative defenses as one of the main issues in the action and, coupled with the injunctive relief sought by the party demanding a jury trial, deny a jury trial on all issues. Even giving great weight to the constitutional right to a jury trial, no abuse of discretion as a matter of law was present.

We do not imply that all actions seeking to establish a common–law dedication should be tried to the court. As stated in *Thompson v. Butler,* 4 Wn. App. 452, 455, 482 P.2d 791 (1971), based "on the particular facts of this case, the trial court's exercise of its discretion, under the guidelines of *Scavenius,* was within acceptable bounds."

The plaintiffs next assign error to the conclusion that a common–law dedication had not been established. *Seattle v. Hill,* 23 Wash. 92, 62 P. 446 (1900), states the following regarding a common–law dedication:

> There are two things which are absolutely essential to a valid common law dedication, viz.: (1) An intention on the part of the owner to devote his land, or an easement in it, to a public use, followed by some act or acts clearly and unmistakably evidencing such intention; and (2) an acceptance of the offer by the public.

*Seattle v. Hill, supra* at 97. *See also* 11 E. McQuillin, *Municipal Corporations* § 33.02 (3d ed. 1977).

The trial court found that neither of the two requisites was established. It was found that Patton's intent was to dedicate the disputed property as a park for the landowners of Patton's Hideaways and that he did not intend that the property be dedicated for public use generally. The trial court further found that since there was no acceptance of any land as a public park by the general public, any attempted dedication on Patton's behalf was revoked when

---

[8]*Theodore v. Washington Nat'l Inv. Co.,* 164 Wash. 243, 2 P.2d 649 (1931) (equitable affirmative defense in effect only a general denial, thus plaintiff's right to jury trial not defeated); *Watkins v. Siler Logging Co.,* 9 Wn.2d 703, 116 P.2d 315 (1941) (conversion action for damages only, no equitable relief sought in complaint; defense of estoppel asserted).

Patton platted the property, sold the lots and paid the property taxes.

The plaintiffs assert that there was no showing that any of the individuals who purchased property in the subdivisions believed the area to be a private park. We disagree. The testimony of a Mr. Wilborn, who purchased property in Patton's Hideaways, is typical of others who purchased property in the subdivisions and supports the inference that the purchasers believed the area to be a private park:

Q . . . [W]hen you were at Mr. Patton's real estate office, what was said at that time?

A We discussed the terms of buying property, sir, there, and told us what ideal location it would be, the type of property I'd probably be interested in, and there's mention of a park that was available to the Patton Hideaway residents.

. . .

Q What were the factors that you considered in purchasing this property from Mr. Patton?

A There were many in respect of our own situation, and the fact that the beach area would be accessible to all of Patton Hideaway was a strong inducement to make the purchase.[9]

In order to prevail on a theory of common–law dedication, it must be established by clear and unmistakable evidence that the landowner intended to dedicate land to a public use. *Seattle v. Hill, supra; Spokane v. Catholic Bishop,* 33 Wn.2d 496, 206 P.2d 277 (1949). The use must be for the public generally. The applicable rule in this regard is as follows:

The essence of dedication is that it shall be for the use of the public at large, that is, the general, unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals. There may be a dedication for special uses, but it must be for the benefit of the public. Properly

---

[9]Plaintiff's complaint is to the same effect. In paragraph V, plaintiff alleges that "[p]rior to and at the time of the creation of Patton's Hideaways Division No. 1, the defendant Lloyd Patton . . . dedicated certain property for use as a park *for the benefit of purchasers of Patton's Hideaway.*" (Italics ours.)

speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land. (Footnotes omitted.) 23 Am. Jur. 2d *Dedication* § 5 (1965). *Accord,* 11 E. McQuillin, *Municipal Corporations* § 33.08 (3d ed. 1979); 4 H. Tiffany, *Law of Real Property* § 1099 (3d ed. 1975).

The plaintiffs point to the newspaper article of September 1959 to support their contention that Patton's intention was that the property be a park for use by the general public. The news article stated that Patton planned to make a portion of his property into a *public* park. The trial court concluded, however, that there was no evidence as to how large the park was going to be or its exact location. Moreover, when the Hideaway No. 2 plat was recorded in 1962, the plat contained only the word "park" in an area outside of the lots designated as Patton's Hideaway No. 2. Where, as here, there was no showing that the public generally used the disputed property, where the defendant continuously paid property taxes thereon, and where no governmental entity recognizes or claims the land as public property, the evidence is insufficient to support a common–law dedication to public use. While these factors have most often been used by courts to determine whether the public has accepted an offer to dedicate,[10] the same factors, or the absence thereof, furnish indicia of an intent, or lack of, to dedicate property for public use. Substantial evidence supports the trial court's finding that Patton did not intend to open the beach up to use by the general public; rather, for it to be available to the owners of lots in Patton's Hideaways. Under these circumstances, a common–law dedication cannot exist.[11]

---

[10]*E.g., Karb v. Bellingham,* 61 Wn.2d 214, 377 P.2d 984 (1963); *Spokane v. Catholic Bishop,* 33 Wn.2d 496, 206 P.2d 277 (1949); *Hanford v. Seattle,* 92 Wash. 257, 158 P. 987 (1916); *Seattle v. Hinckley,* 67 Wash. 273, 121 P. 444 (1912).

[11]Plaintiff's sole theory, at trial and on appeal, is based on a common–law

*Shertzer v. Hillman Inv. Co.,* 52 Wash. 492, 100 P. 982 (1909) and *Lueders v. Tenino,* 49 Wash. 521, 95 P. 1089 (1908) do not support a contrary result as both involve clear and, in the *Shertzer* decision, undisputed evidence to establish a dedication of property as a park for use by the public. Even if it be considered that the 1959 newspaper article evidenced sufficient intent on Patton's behalf to dedicate land for public use, the trial court found that there was no proof of an acceptance of any land as a public park by the general public.

Acceptance may arise by express act, by implication from the acts of municipal officers, or by implication from use by the public for the purpose for which the property was dedicated. *Spokane v. Catholic Bishop, supra.* The plaintiff argues that purchase of adjacent land and use of the disputed property by Hideaway landowners constitutes an implied acceptance. He relies upon *Loose v. Locke,* 25 Wn.2d 599, 171 P.2d 849 (1946), for the proposition that it is not necessary to show that the disputed property was used by any considerable number of individuals, but only that those persons who might naturally be expected to enjoy it have done so. The plaintiffs contend that the Hideaway residents fit such a category. However, it is clear that whatever the Hideaway residents did, it was not as members of the general public, but only as residents of the plat. The testimony of plaintiffs' witnesses indicated that, if anything, the disputed property was to be available to the residents of "Patton's Hideaway" and not the general public. It is not required that all of the public actually use property for an implied acceptance to result, *see Loose v. Locke, supra,* but it must be available to all of the public.

---

dedication. Plaintiffs did not raise either at trial or in written brief on appeal the theory of fraud, easement by estoppel or otherwise, or the doctrine of equitable estoppel. An issue or theory not presented to either the trial court or by written brief on appeal will not be considered by the appellate court. *E.g., Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 465 P.2d 657 (1970); *Puget Sound Marina, Inc. v. Jorgensen,* 3 Wn. App. 476, 475 P.2d 919 (1970).

The trial court correctly concluded that there was no acceptance of any land as a public park by the general public.

The judgment is affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied June 11, 1980.

Review denied by Supreme Court September 5, 1980.