209 P.3d 514 (2009)
Timothy L. JACKOWSKI and Eri Jackowski, husband and wife, Appellants,
v.
David BORCHELT and Robin Borchelt, husband and wife; Hawkinspoe, Inc. dba Coldwell Banker Hawkins-Poe Realtors; Himlie Realty, Inc., and Vince Himlie, Broker for Windermere Himlie Real Estate, real estate brokers, and Robert Johnson and Jef Conklin, real estate agents, Respondents.
No. 36944-3-II.
Court of Appeals of Washington, Division 2.
June 16, 2009.
*516 Jon Emmett Cushman, Attorney at Law, Benjamin D. Cushman, Stephanie M.R. Bird, Cushman Law Offices PS, Olympia, WA, for Appellants.
Jeffrey Paul Downer, Lee Smart PS Inc., Melanie A. Leary, L'Nayim Shuman-Austin, Demco Law Firm PS, Matthew F. Davis, Attorney at Law, Seattle, WA, Carolyn Miller Bixel, Law Offices of Carrie M. Bixel PS, Issaquah, WA, Robert William Johnson, Attorney at Law, Shelton, WA, for Respondents.
BRIDGEWATER, J.
¶ 1 Following landslide damages to their waterfront home, Timothy and Eri Jackowski appeal the Mason County Superior Court's summary judgment dismissal of their fraud and misrepresentation claims against the seller, the seller's agent, and the Jackowskis' own real estate agent. The Jackowskis also fault the trial court for granting their real estate agent's motion to strike the Jackowskis' jury demand. We affirm in part and reverse and remand in part.

FACTS
¶ 2 Hawkins-Poe Real Estate and its real estate agent, Robert Johnson, represented the Jackowskis in a real estate transaction for the purchase of a waterfront home in Mason County from the sellers, David and Robin Borchelt. Windermere Himlie Real Estate and its agent, Jef Conklin, represented the Borchelts in the transaction.
¶ 3 The Jackowskis purchased the house from the Borchelts in 2004. The majority of *517 the Jackowskis' claims involve the Borchelts' actions several years before the sale. For example, several years before the transaction, the Borchelts sought and received a slope stability report from geologist Harold Parks while preparing to add an additional bedroom to the house. The slope drawing attached to the report indicates "New building addition to be west of house." CP at 1223. Parks stated during his deposition that adding the bedroom would not create any additional instability for the house. He indicated that the slope down to the water was unstable only within the first 25 feet of the shoreline, especially within the first 10 feet. He noted that the house was not within 25 feet of the shoreline. In 2002, the Borchelts built the addition to the north of the house instead of the west.
¶ 4 The Borchelts then attempted to improve a road going from their house, down the slope, and to the water, but the county issued a stop-work order. The county ordered the Borchelts to revegetate the slope, requiring at least 90 percent of the plants to survive.
¶ 5 At the time of the sale to the Jackowskis, the parties signed a Residential Real Estate Purchase and Sale Agreement (RESPA) and the Borchelts completed a real property transfer disclosure statement (Form 17), which they provided to the Jackowskis before closing. The Borchelts checked the box labeled "NO" on Form 17 in response to the following questions:
4. STRUCTURAL
....
E. Has there been any settling, slippage, or sliding of the property or its improvements?
CP at 921.
7. GENERAL
....
B. Does the property contain fill material?
C. Is there any material damage to the property from fire, wind, floods, beach movements, earthquake, expansive soils, or landslides?
10. FULL DISCLOSURE BY SELLERS
....
A. Other conditions or defects:
Are there any other existing material defects affecting the property that a prospective buyer should know about?
CP at 922. The Borchelts amended Form 17 on May 13, 2004, to include the following language:
Please refer to Mason County Dept. of Community Development letter attached regarding restoration bond of $4,400.
CP at 923. The letter indicates that the "following critical areas are present on this property: ... Landslide Hazard Areas."[1] CP at 549. The letter also referenced the geotechnical report conducted by geologist Harold Parks.
¶ 6 The Borchelts faxed a copy of the letter to Conklin, their real estate agent. The fax included an addendum, provided by Parks, which again referenced his geotechnical report. Conklin faxed the letter and addendum to Johnson, who then gave them to the Jackowskis. Tim Jackowski admitted receiving and reading both the letter and Park's addendum the day after he made his purchase offer.
¶ 7 The parties included an inspection addendum to the RESPA that provided:
INSPECTION CONTINGENCY. The above Agreement is conditioned on Buyer's personal approval of an inspection of the Property and the improvements on the Property. Buyer's inspection may include, at Buyer's option, the structural, mechanical and general condition of the improvements to the Property, compliance with building and zoning codes, an inspection of the Property for hazardous materials, a pest inspection, and a soils/stability inspection.
CP at 540. The contingency allowed the Jackowskis 15 days to provide a notice of disapproval, with three days provided for the *518 Borchelts to respond. The Jackowskis did not conduct any investigation regarding soil stability before the sale closed. The sale closed on June 30, 2004.
¶ 8 On February 3, 2006, the house slid such that sheetrock cracked and doors stuck. The Jackowskis sued the Borchelts seeking rescission, or in the alternative, damages for fraud, negligent misrepresentation, or breach of contract. The Jackowskis sued Hawkins-Poe, Johnson, Windermere Himlie Real Estate, and Conklin, alleging that they knew or should have known and failed to disclose that the property was in a landslide area. The trial court allowed the Jackowskis to amend their complaint to include claims that Hawkins-Poe and Johnson violated RCW 18.86.050(1)(c) by failing to advise the Jackowskis during the pendency of the real estate transaction to seek the advice of a geotechnical expert, but it denied the Jackowskis' request to include breach of contract claims against Hawkins-Poe and Johnson. The Jackowskis' claims all relate to alleged fraud or misrepresentation regarding the risk of landslides on the property and about the presence of fill on the property.

BORCHELTS
¶ 9 The Borchelts moved for summary judgment on all of the Jackowskis' claims against them, including the Jackowskis' claims for rescission of the sale agreement, fraudulent misrepresentation, constructive fraud, and negligent misrepresentation. The Borchelts argued before the trial court that the Jackowskis' breach of contract claim should fail because the Jackowskis failed to respond to the portion of the Borchelts' motion for summary judgment regarding breach of contract. The trial court agreed and granted that portion of the Borchelts' motion.
¶ 10 The trial court then granted the Borchelts' motion regarding the Jackowskis' negligent misrepresentation claims based on the economic loss rule as described in Alejandre v. Bull, 159 Wash.2d 674, 153 P.3d 864 (2007). The trial court next dismissed the Jackowskis' fraud and fraudulent concealment claims relating to Form 17 because it found that the Jackowskis failed to satisfy the statute of limitations for such claims.[2]
¶ 11 To the extent that any of the Jackowskis' fraud claims regarding the landslide issue fell outside of Form 17, the trial court granted the Borchelts' summary judgment motion because the evidence showed that the Borchelts disclosed to the Jackowskis in written form that the property was in a landslide area. The trial court also noted that a reasonable investigation, which the Jackowskis made their acceptance contingent on, would have revealed the landslide issue. With regard to the issue of whether there was fill on the property, the trial court granted summary judgment on all fraud claims outside of Form 17, again stating that a reasonable investigation would have revealed the presence of the fill.
¶ 12 The trial court denied one of the Borchelts' summary judgment requests. Specifically, the trial court denied summary judgment regarding the fraudulent concealment claim arising from cracks in the basement slab that the Borchelts allegedly covered in order to conceal the defects. We do not address the concrete slab issue here.

HAWKINS-POE AND JOHNSON
¶ 13 The trial court granted Hawkins-Poe and Johnson's first motion for summary judgment regarding negligent misrepresentation claims against them based on similar circumstances in Alejandre, 159 Wash.2d 674, 153 P.3d 864, where the buyer knew of potential issues, but failed to investigate. The trial court dismissed Hawkins-Poe and Johnson without addressing any other claims that the Jackowskis brought against them, including the breach of duty claims under RCW 18.86.050(1)(c).
¶ 14 When the Jackowskis alleged that valid claims remained against Hawkins-Poe and Johnson, Johnson and the agency filed another motion for summary judgment seeking to dismiss any remaining claims against them based on the economic loss rule. The trial *519 court granted Hawkins-Poe and Johnson's second summary judgment motion in its entirety and again dismissed Hawkins-Poe and Johnson from the lawsuit.
¶ 15 By separate motion, the trial court granted Hawkins-Poe and Johnson's summary judgment request to strike the Jackowskis' jury demand. The Borchelts joined that motion.

WINDERMERE HIMLIE AND CONKLIN
¶ 16 The trial court partially granted Windermere Himlie and Conklin's motion for summary judgment, finding that the Jackowskis received written information disclosing that the property was in a landslide hazard area and that a reasonable inspection of the area would have disclosed the existence of fill on the property. The trial court dismissed all claims against Windermere Himlie and Conklin arising out of the alleged nondisclosure of the landslides on the property and on other property and on all claims involving fill on the property. The trial court did not address the economic loss rule in regard to Windermere and Conklin's summary judgment requests because they did not brief the issue.
¶ 17 As with the Borchelts, the trial court denied the motion regarding the Jackowskis' fraudulent concealment claim involving cracks in the basement slab that the Borchelts repaired, covered with carpet, and failed to disclose.
¶ 18 The Jackowskis appeal.

ANALYSIS

Standard of Review
¶ 19 A trial court should grant a motion for summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c). We review summary judgment orders de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. Lam v. Global Med. Sys. Inc., 127 Wash.App. 657, 661 n. 4, 111 P.3d 1258 (2005).

I. Economic Loss Rule
¶ 20 The Jackowskis first contend that the economic loss rule did not apply to their situation because their lives were at risk, which places their claims inside the realm of tort law. We disagree. As an initial matter, we note that the trial court did not grant summary judgment in favor of Windermere Himlie and Conklin based on the economic loss rule because they did not argue it, so we limit this discussion to the Borchelts, Hawkins-Poe, and Johnson.
¶ 21 In Alejandre, our Supreme Court addressed the economic loss rule in detail. Alejandre, 159 Wash.2d at 681-82, 153 P.3d 864. "The economic loss rule applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." Alejandre, 159 Wash.2d at 681, 153 P.3d 864. It is a "device used to classify damages for which a remedy in tort or contract is deemed permissible, but are more properly remediable only in contract." Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 822, 881 P.2d 986 (1994). The rule prohibits parties from recovering economic losses in tort claims when the entitlement to recovery comes from the contract. Alejandre, 159 Wash.2d at 682, 153 P.3d 864.
¶ 22 "Tort law has traditionally redressed injuries properly classified as physical harm." Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 420, 745 P.2d 1284 (1987). It concerns legal obligations rather than bargained-for obligations and serves as a "safety-insurance policy" requiring that products and property that parties sell do not "unreasonably endanger the safety and health of the public." Alejandre, 159 Wash.2d at 682, 153 P.3d 864 (quoting Stuart, 109 Wash.2d at 421, 745 P.2d 1284).
In short, the purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims. Washington law consistently follows these principles. The *520 key inquiry is the nature of the loss and the manner in which it occurs, i.e., are the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies.
Alejandre, 159 Wash.2d at 683-84, 153 P.3d 864 (internal citations omitted).
¶ 23 The Jackowskis contend that because the slide was a "sudden, dangerous event, causing damage to property and threatening life," that tort remedies should be available. Br. of Appellant at 19. We disagree.
¶ 24 The Jackowskis' attempt to reclassify the circumstances in their case as pure, life-threatening, tort claims fails. All the claims the Jackowskis brought stem from their RESPA and the related Form 17 for the purchase of the residential property and their relationships with the sellers and agents involved in the transaction. Accordingly, the Jackowskis' claims seek economic damages rather than redress for physical harm. The trial court did not err by finding that the economic loss rule applied to bar the Jackowskis' negligent misrepresentation claims.

II. Claims Against the Real Estate Companies and Their Agents
¶ 25 The Jackowskis next contend that even if the economic loss rule precluded their negligent misrepresentation claims against the Borchelts, the trial court erred by applying it to all of their statutory claims against Hawkins-Poe and Johnson.[3] In particular, the Jackowskis contend that their claims that Hawkins-Poe and Johnson breached statutory duties owed under RCW 18.86.030, as well as common law duties should have survived summary judgment dismissal. We agree.
¶ 26 The Jackowskis correctly note that RCW 18.86.110 specifically retains common law duties, only superseding them where and to the extent that they are inconsistent with the statute.
This chapter supersedes only the duties of the parties under the common law, including fiduciary duties of an agent to a principal, to the extent inconsistent with this chapter. The common law continues to apply to the parties in all other respects.
RCW 18.86.110. For clarity, we reiterate that chapter 18.86 RCW does not abrogate professional and fiduciary duties of real estate agents.
¶ 27 Neither do we believe that the economic loss rule, as described in Alejandre, abrogates all professional malpractice claims, particularly where a client hires a professional and, therefore, establishes a privity of contract with that professional. We distinguish this holding from Alejandre, which did not involve a buyer suing his real estate agent, but rather, suing the seller. Alejandre, 159 Wash.2d at 680, 153 P.3d 864. We are not willing at this time to expand our Supreme Court's holding in Alejandre to preclude all recovery for economic loss against professional agents, as to do so would be to abrogate professional malpractice claims for all cases not involving physical harm. We do not believe this to be the Alejandre court's intention.
¶ 28 The Jackowskis cite Alejandre for the proposition that "`tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.'" Br. of Appellant at 23 (quoting Alejandre, 159 Wash.2d at 682, 153 P.3d 864). They allege that Hawkins-Poe and Johnson breached statutory and common law duties, not duties assumed only by agreement.
¶ 29 Specifically, they allege that Hawkins-Poe and Johnson violated their duties to the Jackowskis under RCW 18.86.030(1)(a), which requires agents to exercise reasonable skill and care. They contend that Hawkins-Poe and Johnson violated the RCW 18.86.030(1)(c) requirement that agents transmit all written communications to and from either party in a timely manner. The *521 Jackowskis allege that Hawkins-Poe and Johnson violated the RCW 18.86.040(1)(c) duty to advise the buyer to seek expert advice on matters relating to the transaction that are beyond the agent's expertise. Accordingly, we hold that the trial court erred by dismissing the Jackowskis' statutory and common law claims against Hawkins-Poe and Johnson under the economic loss rule.

III. Rescission
¶ 30 The Jackowskis contend that the trial court erred by precluding them from rescinding the contract because neither the economic loss rule nor RCW 64.06.030 abrogate the equitable remedy of rescission for negligent misrepresentation claims. Because we resolve this issue based on common law rescission, we do not address chapter 64.06 RCW rescission.
¶ 31 The Jackowskis contend that they should be entitled to common law rescission because RCW 64.06.070 provides:
Except as provided in RCW 64.06.050, nothing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate against the seller or against any agent acting for the seller otherwise existing pursuant to common law, statute, or contract; nor shall anything in this chapter create any new right or remedy for a buyer of residential real property other than the right of rescission exercised on the basis and within the time limits provided in this chapter.
¶ 32 The Jackowskis allege that, although Alejandre barred monetary recovery for economic loss damages against a seller in a negligent misrepresentation claim, rescission is not a recovery and, thus, should still be available to them. After all, they pleaded in the alternative for either rescission of the contract or damages.
Contract rescission is an equitable remedy in which the court attempts to restore the parties to the positions they would have occupied had they not entered into the contract. Hornback v. Wentworth, 132 Wash.App. 504, 513, 132 P.3d 778 (2006), review granted, 158 Wash.2d 1025, 152 P.3d 347 (2007).
Bloor v. Fritz, 143 Wash.App. 718, 739, 180 P.3d 805 (2008). A court sitting in equity has broad discretion in shaping relief. Hough v. Stockbridge, 150 Wash.2d 234, 236, 76 P.3d 216 (2003).
¶ 33 As an initial matter, the Jackowskis acknowledge that many attorneys have argued that Alejandre precludes the equitable remedy of rescission for misrepresentation and that the common language those attorneys cite is "the economic loss rule precludes any recovery under a negligent misrepresentation theory." Br. of Appellant at 39 (quoting Alejandre, 159 Wash.2d at 677, 153 P.3d 864). Nevertheless, they argue that rescission is an avoidance of contract rather than a recovery. They contend that they should be entitled to relief because they entered into a contract based on misrepresentations. We agree.
¶ 34 They cite a post-Alejandre case, Ross v. Kirner, 162 Wash.2d 493, 172 P.3d 701 (2007), alleging that our Supreme Court has allowed a buyer of real estate to seek rescission for a negligent misrepresentation tort claim. It is true that one of the buyer's underlying requests was to rescind the contract. Ross, 162 Wash.2d at 497-98, 172 P.3d 701. But the Ross court did not address Alejandre or the economic loss rule, nor did the parties address them. Ross, 162 Wash.2d at 500, 172 P.3d 701. Instead, the Ross court found that undisputed evidence did not establish as a matter of law that the respondent committed negligent misrepresentation and a trial should occur to make that determination. Ross, 162 Wash.2d at 500, 172 P.3d 701. While we note the differences between Ross and this case, we nevertheless hold that the trial court erred by dismissing the Jackowskis claims that they should be able to rescind the contract.

IV. Breach of Contract ClaimsBorchelts
¶ 35 The Jackowskis contend that the trial court erred by dismissing their breach of contract claims against the Borchelts. The trial court dismissed the Jackowskis' breach of contract claims because it found that the Jackowskis did not respond to the Borchelts' summary judgment argument regarding breach of contract. The Jackowskis *522 listed breach of contract claims against the Borchelts in their complaint. However, the Borchelts did not make a summary judgment argument regarding breach of contract. The Jackowskis nevertheless mentioned the breach of contract claim in their response to the Borchelts' summary judgment motion, but only as an example of claims that survive the economic loss rule. Accordingly, we hold that the Jackowskis' breach of contract claims were not before the trial court for summary judgment dismissal and accordingly, such dismissal was in error.

V. Reasonable Reliance Fill and Landslides
¶ 36 The Jackowskis contend that the trial court erred by finding that their reliance on the alleged misrepresentations and fraudulent statements was not reasonable. To the extent that the Jackowskis argue that they reasonably relied on the statements as proof of negligent misrepresentation, their argument fails under the economic loss rule. Alejandre, 159 Wash.2d at 683, 153 P.3d 864. Because the Jackowskis' fraud and fraudulent concealment claims fall outside the scope of the economic loss rule, we will address them briefly. Alejandre, 159 Wash.2d at 689, 690, 153 P.3d 864.
¶ 37 We clarify that the Jackowskis sued the Borchelts alleging both fraud and fraudulent concealment, while alleging only fraudulent concealment against Hawkins-Poe, Johnson, Windermere Himlie, and Conklin. In a fraudulent concealment claim, the plaintiff must prove the defect would not have been disclosed by a careful, reasonable inspection by the purchaser. Alejandre, 159 Wash.2d at 689, 153 P.3d 864. Similarly, in a fraud claim, the plaintiff must establish that he had a right to rely on the representation. See Williams v. Joslin, 65 Wash.2d 696, 697, 399 P.2d 308 (1965).
¶ 38 Here, as we discussed above, the Jackowskis had knowledge of the landslide hazard area and, thus, reliance on the Form 17 disclosure could not be reasonable. A reasonable inspection would have disclosed the landslide risk. The Jackowskis acknowledge that they had read the letter indicating that the property that they were contracting to buy was in a landslide hazard area. Tim Jackowski read documents before closing that referenced an existing geotechnical report. Tim Jackowski acknowledged that he made the sale contingent on his ability to hire professionals to conduct property inspections including soil and slope stability. Nevertheless, he failed to utilize the contingency to request such inspections. The trial court did not err by granting summary judgment on the Jackowskis' fraudulent concealment claims based on the landslide risk.
¶ 39 However, we are not convinced to the same extent regarding the fill issue. The Jackowskis' expert, David Strong, testified in deposition that the presence of fill was "obvious." CP at 141.1.
Q. And I also understand that in your inspection of the property, you said the presence of fill was obvious, or something to that effect; is that correct?
A. I believe so, yeah.
Q. So any competent soils inspector, reviewing the property, would have been able to see there was fill on the property?
A. Yes.
CP at 141.1. However, his property evaluation occurred after the sliding event and does not help us decide whether the presence of fill would have been disclosed with a careful, reasonable inspection at the time of the sale.
¶ 40 Architect Randall Thompson stated in his declaration that when he inspected the property following the slide that the "fill is apparent and is located along the north boundary line of the property and is armored with quarry rock." Suppl. CP at 1402. Further, the "fill appears to be as much as 15 feet deep along that edge, and that is only 12 feet north of the north foundation wall of the addition." Suppl. CP at 1402. Again, Thompson based these statements on what he observed when he inspected the property after the sliding event.
¶ 41 Accordingly, the Borchelts were not entitled to summary judgment dismissal of the fill issue as a matter of law for the Jackowskis' fraud and fraudulent concealment claims.

*523 VI. Jury Demand
¶ 42 We next address whether the trial court erred by granting the Borchelts' motion to strike the Jackowskis' jury demand. The Jackowskis contend that we have allowed plaintiffs who pleaded remedies in the alternative, even inconsistent remedies such as rescission of contract through avoidance and damages based on affirmation of the contract, to hold off on electing a remedy, instead of prosecuting both through final judgment. At final judgment, the trial court's election becomes the pleading party's choice. Stryken v. Panell, 66 Wash.App. 566, 571, 832 P.2d 890 (1992). The Jackowskis argue that because they pleaded both rescission and damages, they are entitled to wait and see what remedy the trial court will find appropriate and will accept the trial court's decision at that time.
¶ 43 There is a right to a jury trial where the civil action is purely legal in nature. Peters v. Dulien Steel Prods., Inc., 39 Wash.2d 889, 239 P.2d 1055 (1952). Conversely, there is no right to a jury trial where the action is purely equitable in nature. Dexter Horton Bldg. Co. v. King County, 10 Wash.2d 186, 116 P.2d 507 (1941); Knudsen v. Patton, 26 Wash.App. 134, 137, 611 P.2d 1354, review denied, 94 Wash.2d 1008 (1980). "The overall nature of the action is determined by considering all the issues raised by all of the pleadings." Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 365, 617 P.2d 704 (1980). In determining whether an action is primarily equitable or is an action at law, we grant the trial court wide discretion and will not disturb that discretion absent clear abuse. Brown, 94 Wash.2d at 368, 617 P.2d 704.
¶ 44 The trial court should exercise its discretion with reference to a non-exhaustive list of factors including: (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) if the nature of the action is doubtful, a jury trial should be allowed; and (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether to grant a jury trial on all or part of the issues. Scavenius v. Manchester Port Dist., 2 Wash.App. 126, 129-30, 467 P.2d 372 (1970).
¶ 45 Applying these factors to the current case, the Jackowskis seek the equitable relief, rescission. The Jackowskis also demand a jury trial. One of the main issues is whether the Jackowskis are entitled to rescind the contract, which is clearly equitable. They seek, in the alternative, damages resulting from fraud, negligent misrepresentation, and breach of contract, in amounts to be proven at trial. The complexities at trial could affect the orderly determination of issues by the jury. We cannot say, however, that the trial court abused its discretion where a major basis of the claim, the rescission request, is equitable. We hold that the trial court did not err by granting the Borchelts' motion to strike the Jackowskis' jury demand.

VII. Attorney Fees on Appeal
¶ 46 The Jackowskis request attorney fees on appeal under terms authorized in the contract. RAP 18.1 allows attorney fees on appeal if they are authorized by applicable law. The RESPA provides that if either party institutes a suit against the other, the prevailing party is entitled to attorney fees and expenses. The Jackowskis cite RCW 4.84.300 in support of their request, but not only is this an incorrect citation, it applies only to damage actions of $10,000 or less. RCW 4.84.250. RCW 4.84.260 provides that the prevailing party is the party that receives recovery that totals as much as or more than the amount offered in settlement. None of this information is available to us at this time.
¶ 47 We affirm summary judgment dismissal of the Jackowskis' negligent misrepresentation claims against the Borchelts based on the economic loss rule. We reverse and remand for trial the Jackowskis' statutory and common law claims against Hawkins-Poe and Johnson. We reverse the trial court *524 and hold that common law rescission is not precluded by the economic loss rule. We affirm summary judgment dismissal on all claims against Windermere Himlie and Conklin based on the Jackowskis' knowledge of the landslide risk. We affirm summary judgment dismissal of all fraud and fraudulent concealment claims relating to the landslide issue for all parties because a reasonable inspection would have revealed the risk and because the Jackowskis' knew that the property was within a landslide hazard area. We reverse and remand the Jackowskis' fraud and fraudulent concealment claims relating to the presence of fill on the property. We hold that the trial court did not abuse its discretion by striking the Jackowskis' jury demand. We reverse and remand the trial court's dismissal of the Jackowskis' breach of contract claims against the Borchelts as they were not properly before the trial court for dismissal. We deny attorney fees on appeal because the Jackowskis fail to inform us how they are the prevailing party.
We concur: ARMSTRONG, J., and PENOYAR, A.C.J.
NOTES
[1] The "Landslide Hazard Areas" language is circled along with "Aquatic Management Areas." CP at 549.
[2] RCW 64.06.020, which addresses the seller's disclosure duty and the minimum information that Form 17 must include, provides that the buyer has three days after he or she receives the disclosure statement to rescind the contract.
[3] We note that the Jackowskis amended their complaint to allege statutory violations against Hawkins-Poe and Johnson and did not do so regarding Windermere Himlie and Conklin. Accordingly, we consider only Hawkins-Poe and Johnson in this section.