[No. 62446-6-I.   Division One.   December 21, 2009.]

GEOFF BOGUCH, *Appellant*, v. THE LANDOVER CORPORATION
ET AL., *Respondents*.

598

*Robert M. Sulkin, David R. East,* and *Barbara H. Schuknecht* (of *McNaul Ebel Nawrot & Helgren*), for appellant.

*Matthew F. Davis*; and *Mark S. Davidson* (of *Williams Kastner & Gibbs PLLC*), for respondents.

¶1 Dwyer, A.C.J. — To prevail on a claim that a real estate agent's negligence caused a financial loss on the sale of property, the property owner must show that, but for the agent's negligence, he or she would have sold the property

on terms more advantageous than those of the eventual sale. Geoff Boguch failed to adduce evidence establishing that, had his Realtors not published an inaccurate depiction of the boundary lines of his property, he would have sold that property on more advantageous terms than the terms of the eventual sale. Boguch's assertion that he would have sold the property for a higher price than he eventually did is speculative. Accordingly, we affirm the trial court's order granting summary judgment in the Realtors' favor.

¶2 Also at issue is whether one of Boguch's Realtors is entitled to an award of attorney fees under her contract with Boguch. A provision in the contract provides for an award of attorney fees to the prevailing party in an action brought to enforce the terms of the agreement. However, a party may recover attorney fees under a contractual provision such as the one at issue herein only where the underlying action is brought on the contract and the contract is central to the dispute. Where a party alleges a breach of a duty imposed by a source other than the contract, the action is not on the contract, even if the duty would not exist in the absence of a contractual relationship. Although Boguch claimed a breach of contract, the litigation herein concerned Boguch's claims that the Realtors breached the common law and statutory duties they owed to Boguch in representing his interests. Therefore, pursuant to the contract's fee-shifting provision, Boguch's Realtor may not recover fees incurred for time spent defending against Boguch's tort claims. Because the Realtor's contractual fee-recovery right is limited to fees incurred in defense of an action brought on the contract, the Realtor must segregate the time her lawyers spent defending against Boguch's tort claims from the time they spent defending against his breach of contract claim in order to prove her entitlement to a fee award. Accordingly, we vacate the trial court's award of attorney fees and remand for a recalculation of the award.

I

¶3 In February 2001, Boguch entered into an exclusive sale and listing agreement with two real estate brokers—Wendy Lister of the Landover Corporation and Rondi Egenes of Windermere Real Estate/East, Inc. (collectively Realtors)—for the sale of waterfront property located in the town of Hunts Point, Washington. The initial duration of the agreement was for six months and was thereafter renewable on a month-to-month basis. Pursuant to the agreement, the Realtors were responsible for listing Boguch's property with the Northwest Multiple Listing Service (MLS) in exchange for a five percent sales commission. Before the parties entered into the agreement, Lister suggested that the property should be listed for sale at $3.85 million and indicated that Boguch should expect to sell the property for approximately $3.5 million. Boguch subsequently listed the property at $3.85 million.

¶4 During the first six months the property was on the market, no one offered to purchase it. In September, in response to the lack of interest in the property, Boguch, in consultation with the Realtors, reduced the listing price to $3.475 million. The reduced price, however, did not spark interest among buyers. Over the next six months, no one expressed interest in purchasing the property.

¶5 In March 2002, the Realtors posted an aerial photograph of the property on the MLS web site. The photograph contained superimposed lines depicting the property's boundaries. The lines, however, were inaccurate. They depicted the property as being smaller in area and less uniform in shape than it actually was. Instead of depicting the property as a waterfront lot roughly shaped as a parallelogram, the photograph indicated that one of the boundary lines along the length of the property ran in a jagged fashion, meandering toward and away from the property's center line. This boundary line made the property appear to be unevenly narrow at certain points. The

inaccurate line also made it appear as though foliage having the potential to interfere with views of the water from Boguch's house on the property was rooted on an adjacent property. Further, the lines made the length of the property's shoreline appear to be shorter than it actually was.

¶6 More than two years passed after the Realtors posted the photograph on the MLS web site before anyone noticed these errors. Sometime in either late spring or early summer of 2004, Art Whittlesey, another real estate broker associated with Landover, contacted Boguch about the property. Whittlesey explained to Boguch that he had shown the property to Todd Bennett, a developer and mutual acquaintance of both Whittlesey and Boguch who was interested in buying waterfront property either as an investment or for his own use. After viewing Boguch's property, Bennett decided that he was not interested in purchasing it. In his conversation with Whittlesey about Bennett's decision not to make an offer on the property, Boguch became aware that the aerial photograph posted on the web site inaccurately depicted the property's boundary lines. Despite being aware of the inaccurate depiction, however, Boguch did not immediately raise this issue with either Lister or Egenes. Instead, he continued to list the property with them, even though no one had offered to purchase the property during the entire time that it was on the market. At some point in the summer of 2004, Boguch discussed the inaccurate photograph with the Realtors, and they removed the erroneous image from the web site. Boguch then allowed his contract with the Realtors to expire at the end of July.

¶7 In August 2004, Boguch listed the property with Whittlesey, further reducing the asking price to $3.395 million. Within six months of doing so, a couple offered to purchase the property for between $2.7 and $2.8 million. In April 2005, Boguch sold the property to these buyers for $2.975 million.

¶8 Boguch subsequently sued Lister and Egenes and their respective firms, bringing a common law negligence claim against them, as well as a claim that the Realtors breached their professional duties under chapter 18.86 RCW.[1] In bringing these claims, Boguch alleged that the Realtors were negligent in posting the inaccurate depiction of the property boundary lines on the Internet and that, but for their negligence, he would have sold the property sooner and for a higher price than he eventually did. Boguch also brought an unspecified breach of contract claim against the Realtors.

¶9 Shortly before trial, the Realtors moved for summary judgment, contending that Boguch could not put forth evidence establishing that their alleged negligence was the proximate cause of his claimed injuries. Any verdict in Boguch's favor, they asserted, would necessarily be based on speculation.

¶10 In opposition, Boguch argued that several pieces of circumstantial evidence satisfied his burden of establishing a prima facie claim of negligence against the Realtors. Boguch maintained that this evidence, when viewed as a whole, showed that the inaccurate boundary line depiction triggered a vicious cycle of reduction in the property's market value. According to Boguch's theory, the erroneous boundary lines made the property appear overpriced and thus deterred prospective buyers from offering to purchase the property. Prospective buyers' reluctance to consider the property, in turn, caused the property to sit on the market longer than it would have otherwise. Consequently, Boguch

---

[1] RCW 18.86.030 provides, in pertinent part:

(1) Regardless of whether the licensee is an agent, a licensee owes to all parties to whom the licensee renders real estate brokerage services the following duties, which may not be waived:
(a) To exercise reasonable skill and care.

RCW 18.86.040(1) provides, in pertinent part:

Unless additional duties are agreed to in writing signed by a seller's agent, the duties of a seller's agent are limited to those set forth in RCW 18.86.030 and the following, which may not be waived except as expressly set forth in (e) of this subsection.

asserted, the property's market value was further reduced, as prospective buyers assumed that the property was overpriced because it had been on the market for a relatively long period of time. The longer the property sat on the market, Boguch argued, the more difficult it became to sell.

¶11 In support of these contentions, Boguch pointed to evidence that the eventual buyers were unwilling to pay a higher price for the property because they believed that the length of time the property was on the market meant the property was overpriced or somehow flawed. According to Whittlesey's deposition testimony, the buyers' agent stated during negotiations that the buyers "did not want to go forward with the deal . . . because of the time the property had been on the market" and that they believed "something must be the matter with the property because of that time without a sale." Boguch testified similarly in his deposition. Boguch also submitted e-mail correspondence he received from Whittlesey in 2005 summarizing statements of the buyers' agent to this effect. Lister and Whittlesey testified in their depositions that Internet advertisements are vital to the marketing of real estate and, further, confirmed that buyers often consider properties that sit on the market for a prolonged period of time to be risky investments.

¶12 To support the allegation that the erroneous photograph caused the property to languish on the market, Boguch relied on statements allegedly made by Paula Fortier, the manager of the Landover office in which Lister worked. According to Boguch's deposition testimony, Fortier commented in a meeting she had with both Boguch and Whittlesey that the property did not sell because it appeared to be roughly one million dollars overpriced based on the erroneous Internet posting. Whittlesey testified in his deposition that he spoke to Fortier about the eventual buyers' concerns about the property and that she "agreed that the time on the market was from misrepresenting the property lines which affected the view and water frontage." Boguch also submitted e-mail correspondence in which Whittlesey summarized his conversation with Fortier to the same effect.

¶13 In her deposition testimony, Fortier confirmed that the eventual buyers' agent had stated that the buyers were concerned about how long the property had been on the market. She further testified that it was not typical for a property to sit on the market for an extended period of time without the owner receiving an offer. She also generally agreed that the length of time a property sits on the market can negatively affect a buyer's impression of the property and that some buyers might not have been interested in Boguch's property because of the amount of time it sat on the market. However, she denied having stated that the length of time Boguch's property sat on the market was due to the inaccurate depiction of the boundary lines.

¶14 To further buttress his allegations, Boguch also submitted the deposition testimony of Evangeline Anderson, his real estate sales expert witness. Anderson testified that if she had seen the erroneous photograph while representing a prospective buyer, she would not have shown the property to the buyer. She testified that the meandering boundary lines would have raised concerns in her mind about the ease with which the property could be developed in light of land use restrictions such as setback requirements. She also testified that the property line, as depicted, made it appear that a fence could be erected on the neighboring property, resulting in an obstruction of the water view. Anderson further testified that, for these reasons, she would have "set [the listing] aside" and she believed that "other sales people would have [had] the same attitude." However, Anderson additionally testified that she had not spoken to anyone who actually saw the listing and decided not to show it to a prospective buyer. Further, when pressed on whether she would have discussed the property with a prospective buyer at all, Anderson acknowledged that she would have shown the property to a prospective buyer but that she would not have made showing the property a priority.

¶15 Boguch also pointed to evidence tending to eliminate the possibility that factors other than the Internet posting

accounted for the lack of known interest in his property among prospective buyers. According to Anderson's deposition testimony, the property was priced appropriately when Boguch reduced the asking price to $3.475 million in September 2001 before the erroneous photographs were posted on the Internet in March 2002. She did not testify as to whether the property was priced appropriately at the outset. Whittlesey, however, stated that $3.475 million was too high an asking price when he took over the listing in August 2004. Boguch also submitted Lister's and Egenes' sales records, which showed that they sold other waterfront properties of similar value during the same time period that Boguch's property was on the market.

¶16 In addition, the parties submitted Whittlesey's deposition testimony concerning his showing of the property in 2004 to Bennett—the showing that led to Boguch's discovery of the inaccurate boundary line depiction. Whittlesey testified that Bennett was not interested in purchasing the property, in part, because of the boundary line as depicted on the Internet, but also because of the location of the property, the view of the water from the property, and the steepness of the property's slope. Whittlesey further testified that Bennett remained uninterested in the property even after being informed of the correct boundaries. According to Whittlesey's testimony, Bennett's lack of interest did not stem solely from the erratic boundary lines as depicted but, rather, was based on "several reasons."

¶17 After the parties filed their briefing and supporting evidence, the Realtors moved to strike, as inadmissible hearsay, those portions of Boguch's and Whittlesey's deposition testimony concerning conversations with Fortier and Bennett. They also moved to strike Whittlesey's e-mails to Boguch concerning the same topics. The trial court denied the Realtors' motion to strike. However, it granted the Realtors' motion for summary judgment and entered an order dismissing all of Boguch's claims.

¶18 Landover and Lister (together Landover) subsequently moved for an award of approximately $95,000 in attorney fees and costs pursuant to the attorney fee provision in the listing agreement.[2] This provision specified that "[i]n the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay reasonable attorneys' fees." However, when Landover initially filed its motion, it failed to segregate the time its lawyers spent defending against the different claims brought by Boguch. The trial court initially denied Landover's motion without prejudice, noting that Landover could resubmit its request for a fee award after appropriately accounting for its lawyers' time. Landover then segregated a relatively small amount of time its lawyers devoted exclusively to Boguch's tort claims and resubmitted the motion, reducing the total amount of fees and costs requested to approximately $83,000. Further, in resubmitting the motion, Landover argued that none of the remaining time could be segregated further because Boguch's contract and tort claims all arose from the listing agreement and involved the same elements, making segregation neither necessary nor feasible. Accepting Landover's explanation for its failure to further segregate its lawyers' billable time, the trial court awarded Landover fees and costs as requested. Boguch now appeals from both the order granting summary judgment and the order awarding attorney fees and costs.

## II

¶19 Boguch first contends that summary judgment was improperly granted because a genuine issue of material fact exists as to whether the erroneous photograph caused him

---

[2] The trial court denied Windermere's and Egenes' motion for an award of attorney fees. Windermere and Egenes did not appeal from that order.

to be unable to sell his property sooner and for a higher price than he eventually did.[3] We disagree.

¶20 We review de novo a trial court's order granting summary judgment. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 497, 210 P.3d 308 (2009) (citing *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 693, 169 P.3d 14 (2007)). In so doing, we engage in the same analysis as the trial court. *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 634, 854 P.2d 23 (1993). Accordingly, we examine the evidence—and only that evidence—in the record before the trial court when the summary judgment motion and any responsive memoranda were filed.[4] *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 147, 787 P.2d 8 (1990).

¶21 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990) (citing *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). In determining whether a genuine issue of material fact exists, we "must view all facts and reasonable infer-

---

[3] The trial court entered an order of summary judgment dismissing Boguch's breach of contract claim as well as his common law and statutory negligence claims. Boguch has not assigned error to the dismissal of his breach of contract claim.

[4] As they did before the trial court, the Realtors argue in their briefing on appeal that portions of Boguch's and Whittlesey's deposition testimony and Whittlesey's e-mails contained in the record are inadmissible hearsay. As explained above, however, the trial court denied the Realtors' motion to strike these pieces of evidence, and it considered them in ruling on the Realtors' motion for summary judgment. The Realtors have not assigned error to the trial court's denial of their motion to strike. Further, we need not disturb the ruling in order to affirm the trial court's decision on summary judgment. Accordingly, we need not address the admissibility of this evidence. *Herrington v. David D. Hawthorne, CPA, PS*, 111 Wn. App. 824, 840, 47 P.3d 567 (2002) (citing *Sunland Invs., Inc. v. Graham*, 54 Wn. App. 361, 364, 773 P.2d 873 (1989)).

ences in the light most favorable to the nonmoving party." *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 320, 111 P.3d 866 (2005) (citing *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 125, 30 P.3d 446 (2001)).

¶22 The party moving for summary judgment "bears the burden of demonstrating there is no genuine dispute as to any material fact." *VersusLaw*, 127 Wn. App. at 319 (citing *Green v. A.P.C.*, 136 Wn.2d 87, 100, 960 P.2d 912 (1998)). If the moving party is the defendant, it may meet this burden by pointing out that there is an absence of evidence to support an essential element of the plaintiff's claim. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). To avoid summary judgment, the plaintiff must make out a prima facie case concerning the essential element of its claim. *Young*, 112 Wn.2d at 225. "If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young*, 112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322). Summary judgment in this context is warranted " 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' " *Young*, 112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322-23).

¶23 To prevail on a negligence claim, the plaintiff must show (1) that the defendant owed a legal duty to the plaintiff, (2) that the defendant negligently breached its duty, and (3) that the defendant's breach was the proximate cause of the plaintiff's alleged injury. *Ruff v. County of King*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995) (citing *Hansen v. Wash. Natural Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981)). There is no dispute that the Realtors owed Boguch certain duties as his agent. When acting as a seller's agent, a Realtor owes the seller a nonwaiveable duty to exercise reasonable skill and care in representing the

seller's interests. RCW 18.86.040(1). In addition, pursuant to RCW 18.86.110, a real estate agent "retains common law duties" owed to clients. *Jackowski v. Borchelt*, 151 Wn. App. 1, 14, 209 P.3d 514 (2009).

¶24 Of concern here is whether Boguch produced evidence tending to establish that the inaccurate boundary depiction proximately caused him to suffer an identifiable financial loss on the eventual sale of the property. "[P]roximate cause consists of two elements: cause in fact and legal causation." *City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997) (citing *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)). "Cause in fact concerns 'but for' causation, [i.e.,] events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred." *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999) (quoting *Taggart v. State*, 118 Wn.2d 195, 226, 822 P.2d 243 (1992)). "The 'but for' test requires a plaintiff to establish that the act complained of probably caused" the alleged injury. *Daugert v. Pappas*, 104 Wn.2d 254, 260, 704 P.2d 600 (1985).[5]

¶25 In tort actions, issues of negligence and causation are questions of fact not usually susceptible to summary judgment. *Ruff*, 125 Wn.2d at 703 (citing *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975)). However, a party resisting summary judgment cannot satisfy his or her burden of production merely by relying on conclusory allegations, speculative statements, or argumentative assertions. *Las v. Yellow Front Stores, Inc.*, 66 Wn. App. 196, 198, 831 P.2d 744 (1992). Rather, the nonmoving party "must set forth specific facts" demonstrating a genuine issue of fact. *Las*, 66 Wn. App. at 198. Although a plaintiff may prove the elements of negligence through circumstantial evidence, " '[t]he facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only

---

[5] Legal causation "involves the question of whether liability should attach as a matter of law, even if the proof establishes cause in fact." *Blume*, 134 Wn.2d at 252.

conclusion that fairly or reasonably can be drawn from them.'" *Grobe v. Valley Garbage Serv., Inc.*, 87 Wn.2d 217, 225-26, 551 P.2d 748 (1976) (quoting *Schmidt v. Pioneer United Dairies*, 60 Wn.2d 271, 276, 373 P.2d 764 (1962)); *see also In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 61, 93 P.3d 166 (2004); *Sanchez v. Haddix*, 95 Wn.2d 593, 599, 627 P.2d 1312 (1981).

¶26 In analyzing whether Boguch has met his burden of production on the element of proximate cause, we are guided by the reasoning in cases involving clients' claims of professional negligence against their attorneys. *See, e.g., Daugert*, 104 Wn.2d 254; *Estep v. Hamilton*, 148 Wn. App. 246, 201 P.3d 331 (2008), *review denied*, 166 Wn.2d 1027 (2009); *Geer v. Tonnon*, 137 Wn. App. 838, 155 P.3d 163 (2007), *review denied*, 162 Wn.2d 1018 (2008); *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 147 P.3d 600 (2006), *review denied*, 161 Wn.2d 1011 (2007); *Griswold v. Kilpatrick*, 107 Wn. App. 757, 27 P.3d 246 (2001); *Ahmann-Yamane, LLC v. Tabler*, 105 Wn. App. 103, 19 P.3d 436 (2001); *Sherry v. Diercks*, 29 Wn. App. 433, 628 P.2d 1336 (1981). In those cases, the clients alleged that they would have obtained results more favorable than the actual outcomes in their legal proceedings but for their attorneys' breaches of their duties of professional care. Similarly, Boguch alleges that he would have been able to sell his property sooner and for a higher price than he eventually did but for his Realtors' negligence.

¶27 Our Supreme Court has recognized that "[t]he principles of proof and causation in a legal malpractice action usually do not differ from an ordinary negligence case." *Daugert*, 104 Wn.2d at 257 (citing *Ward v. Arnold*, 52 Wn.2d 581, 584, 328 P.2d 164 (1958)). Proof only of an attorney's negligence is insufficient for malpractice liability to attach. A client must show that, if the client's attorney had not committed the alleged malpractice, the client "would have prevailed or at least would have achieved a better result" than that actually obtained. *Sherry*, 29 Wn. App. at 438; *see also Daugert*, 104 Wn.2d at 263; *Estep*, 148 Wn. App. at 256;

*Geer*, 137 Wn. App. at 844; *Smith*, 135 Wn. App. at 864; *Ahmann-Yamane*, 105 Wn. App. at 110. Similarly, Boguch must show that, if the Realtors had not posted the photograph erroneously depicting his property's boundary lines on the Internet, he would have sold the property on more favorable terms than he eventually did.

¶28 Boguch has not met this burden. There is no evidence that, in the absence of the inaccurate photograph, the property would have sold within a certain price range, much less that a particular individual would have purchased the property for a particular price. The evidence in the record shows that, other than the eventual buyers, only one individual, Bennett, expressed even the slightest interest in purchasing the property. Although the record indicates that Bennett lost interest in the property, in part, because of the inaccurate boundary depiction, the record also makes clear that his lack of interest was based on "several reasons," including the property's general location, the direction of the view, and the slope of the land. The record also indicates that Bennett remained uninterested in the property even after being apprised that the depiction was inaccurate. As we have recognized in an analogous context, "it is difficult [for a plaintiff] to escape the realm of speculation when trying to prove" that an agent's negligence caused an unfavorable outcome when many variables may have affected the outcome. *Griswold*, 107 Wn. App. at 762 (citing *Thompson v. Halvonik*, 36 Cal. App. 4th 657, 43 Cal. Rptr. 2d 142 (1995)). The multiple reasons for Bennett's lack of interest in purchasing the property illustrate that many factors might have influenced a prospective buyer's decision concerning Boguch's property. Therefore, not only is it speculative as to whether there was in fact a prospective buyer who would have purchased Boguch's property but it is also speculative as to whether such a prospective buyer was dissuaded from purchasing the property because of the inaccurate posting.

¶29 Boguch's theory rests on the assumption that unknown prospective buyers who would have purchased the

property either never considered it because their agents decided not to show it to them or must have had misgivings about the property based on the length of time it was on the market, similar to those misgivings harbored by the eventual buyers. However, the evidence in the record does not support this assumption. Although multiple witnesses testified that buyers may negatively perceive a residential property that has been on the market for a relatively long period of time, the record does not show that this generalized belief was in fact held by any identified prospective buyer who considered Boguch's property or by such a prospective buyer's agent. Boguch's theory would require a trier of fact to infer that some person actually existed who was willing to pay a higher price for the property than the eventual buyers paid for it but who was otherwise deterred from doing so. This theory might be plausible in light of the collection of circumstantial evidence that Boguch submitted. However, the evidence submitted does not create the logical chain leading inexorably to the conclusion that Boguch asserts. Anderson's testimony about agents' and buyers' attitudes generally, other witnesses' testimony about the potential negative effects of listing a property for a long period of time, Boguch's Realtors' concurrent sales records, and the eventual buyers' concerns expressed during sales negotiations are all consistent with Boguch's theory and may even be suggestive of his conclusion. But the evidence in the record, even when viewed in Boguch's favor, would not allow a rational trier of fact to reasonably infer that Boguch would have obtained a result different from the terms of the eventual sale without speculating about other essential facts.

¶30 Fortier's alleged statements that the photograph caused the property to remain on the market for an extended period are insufficient to create a genuine issue on the element of proximate cause. Even viewing them in the light most favorable to Boguch, they do not establish the essential element of Boguch's claim: that he would have sold his property for a higher price than he eventually did.

Although Boguch is correct that circumstantial evidence can be as probative as direct evidence and may create a chain of facts from which the jury may draw reasonable inferences of ultimate facts, *Attwood v. Albertson's Food Ctrs., Inc.*, 92 Wn. App. 326, 330-31, 966 P.2d 351 (1998), circumstantial evidence establishing proximate cause must still "rise above speculation, conjecture, or mere possibility." *Attwood*, 92 Wn. App. at 331 (citing *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995)). In the absence of evidence that some person would have likely purchased the property on terms more favorable to Boguch than those of the eventual sale, Boguch's assertion, based on circumstantial evidence, that his Realtors' alleged negligence was the proximate cause of his purported financial loss does not rise above speculation.

¶31 Boguch's reliance on *Weatherbee v. Gustafson*, 64 Wn. App. 128, 822 P.2d 1257 (1992), and *Strachan v. Kitsap County*, 27 Wn. App. 271, 616 P.2d 1251 (1980), for the proposition that he submitted sufficient evidence to withstand summary judgment is misplaced. In both of those cases, the plaintiffs put forth evidence from which a jury could reasonably infer that the defendants' negligence caused the plaintiffs' respective injuries. *See Weatherbee*, 64 Wn. App. at 133-34; *Strachan*, 27 Wn. App. at 277. In contrast to both *Weatherbee* and *Strachan*, there is here no testimony or other evidence from which a trier of fact could reasonably infer that the Realtors' negligence was the proximate cause of Boguch's alleged injuries.

¶32 As discussed above, nothing shows that any identified prospective buyer was actually dissuaded from considering the property because of the inaccurate depiction. That an alternative outcome might have been possible or that Boguch's theory may appear plausible in the abstract is insufficient to create a genuine issue on the element of proximate cause in this context. Boguch is required to produce evidence tending to show that a transaction different from the eventual conveyance would have occurred in the absence of the Realtors' error. *See Geer*, 137 Wn. App. at

851 (citing *Halvorsen v. Ferguson*, 46 Wn. App. 708, 721-22, 735 P.2d 675 (1986)). He has failed to put forth evidence establishing this element. His theory relies upon requiring a trier of fact to engage in speculation or conjecture. Accordingly, the Realtors were entitled to summary judgment as a matter of law. The trial court did not err.

## III

¶33 Boguch next contends that the trial court erred in awarding attorney fees and costs to Landover under the attorney fee provision in the listing agreement, which provided for an award of fees in any action brought to enforce the terms of the agreement. We agree.

¶34 "Whether a party is entitled to attorney fees is an issue of law that we review de novo." *Little v. King*, 147 Wn. App. 883, 890, 198 P.3d 525 (2008) (citing *Tradewell Grp. Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993)). A prevailing party may recover attorney fees under a contractual fee-shifting provision such as the one at issue herein only if a party brings a "claim on the contract," that is, only if a party seeks to recover under a specific contractual provision. If a party alleges breach of a duty imposed by an external source, such as a statute or the common law, the party does not bring an action on the contract, even if the duty would not exist in the absence of a contractual relationship. *Hemenway v. Miller*, 116 Wn.2d 725, 743, 807 P.2d 863 (1991); *Burns v. McClinton*, 135 Wn. App. 285, 310-11, 143 P.3d 630 (2006), *review denied*, 161 Wn.2d 1005 (2007); *G.W. Constr. Corp. v. Prof'l Serv. Indus., Inc.*, 70 Wn. App. 360, 366, 853 P.2d 484 (1993).

¶35 "[A]n action is on a contract for purposes of a contractual attorney fees provision if the action arose out of the contract and if the contract is central to the dispute." *Tradewell Grp.*, 71 Wn. App. at 130 (citing *Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991); *W. Stud Welding, Inc. v. Omark Indus., Inc.*, 43 Wn. App. 293, 299, 716 P.2d 959 (1986)).

Stated differently, an action "sounds in contract when the act complained of is a breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship." *G.W. Constr.*, 70 Wn. App. at 364 (citing *Yeager v. Dunnavan*, 26 Wn.2d 559, 562, 174 P.2d 755 (1946)). "If the tortious breach of a duty, rather than a breach of a contract, gives rise to the cause of action, the claim is *not* properly characterized as breach of contract." *Owens v. Harrison*, 120 Wn. App. 909, 915, 86 P.3d 1266 (2004) (emphasis added) (citing *G.W. Constr.*, 70 Wn. App. at 364).

¶36 Our decision in *G.W. Construction* is instructive. There, a subcontractor entered into a contract for construction work and was required to perform inspections as set forth in the Uniform Building Code (UBC). *G.W. Constr.*, 70 Wn. App. at 362. The contract itself did not set forth inspection requirements. Although the subcontractor certified that it performed the required inspections, the construction did not meet building specifications, *G.W. Constr.*, 70 Wn. App. at 363, and the contractor sued the subcontractor for breach of contract and negligence. We recognized that "[t]he terms of the UBC are incorporated by reference into the contract" and therefore the inspections required by the UBC "are terms of the contract." *G.W. Constr.*, 70 Wn. App. at 365-66. However, we held that the contractor's negligence claim was not "on the contract" because "each act required of a professional engineer utilizing reasonable engineering skill in the performance of a contract [does not] constitute[ ] a specific contractual undertaking." *G.W. Constr.*, 70 Wn. App. at 366. We recognized that a claim that a party failed to fulfill an obligation that he or she specifically agreed to perform would constitute an action on the contract. However, a claim that a party "fail[ed] to exercise the necessary degree of professional . . . care in doing so would not, unless the omission violated a specific contractual undertaking." *G.W. Constr.*, 70 Wn. App. at 366.

¶37 Analogies to legal malpractice or medical malpractice claims are also apt. If an attorney agrees to draft a will

for a client and fails to do so, the client would be able to claim breach of contract and recover under an applicable contractual fee provision. "However, if the attorney drafts the will and negligently omits having its execution properly witnessed, the attorney would be liable in tort for professional malpractice." *G.W. Constr.*, 70 Wn. App. at 366. The same would be true for a doctor who performs a medical procedure pursuant to a contract but is negligent in doing so. That was the underlying situation in *Yeager*, in which our Supreme Court held that

> "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, *but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself,* and in such case allegations of the latter are considered mere inducement, showing the relationship which furnishes the right of action for the tort, but not the basis of recovery for it."

26 Wn.2d at 562 (quoting *Compton v. Evans*, 200 Wash. 125, 132, 93 P.2d 341 (1939)).

¶38 Thus, Boguch's claim that Landover violated its duties under chapter 18.86 RCW is a tort claim, rather than a claim on the contract. Although Landover's duty to Boguch arose because the parties entered into a contractual relationship, the listing agreement itself does not specify the duty of care that the Realtor must provide. To the contrary, the common law and chapter 18.86 RCW imposed a duty to exercise reasonable care on the Realtors. Although the statute may be read as being incorporated into the listing agreement by reference, it does not follow that any act taken in fulfillment or derogation of that duty constitutes specific contractual performance or breach thereof. *G.W. Constr.*, 70 Wn. App. at 366.

¶39 Moreover, as the court in *Jackowski* recently recognized, the economic loss rule, which "prohibits parties from recovering economic losses in tort claims when the entitlement to recovery comes from the contract," 151 Wn. App. at 12 (citing *Alejandre v. Bull*, 159 Wn.2d 674, 682, 153 P.3d 864 (2007)), does not "preclude all recovery for economic loss against professional agents, as [doing so would] abrogate professional malpractice claims for all cases not involving physical harm." 151 Wn. App. at 14. Boguch's claimed right of recovery is not based on the contract itself. In claiming that the Realtors were negligent, Boguch sought to recover for breach of the common law and statutory duties they owed to him, not for the Realtors' failure to perform a contractual duty.

¶40 Landover's reliance on our decision in *Edmonds v. John L. Scott Real Estate, Inc.*, 87 Wn. App. 834, 942 P.2d 1072 (1997) is misplaced. There, we upheld an award of attorney fees to Edmonds who sued her Realtor for breach of fiduciary duty, among other things. Edmonds' Realtor failed to return her earnest money after she withdrew from a real estate transaction. Instead, he disbursed it to himself and the seller. *Edmonds*, 87 Wn. App. at 842, 855-56. We concluded that Edmonds' action was on a contract for the purpose of recovering attorney fees under a contractual fee-shifting provision because her claims arose directly out of duties created by her broker/buyer agreement, the earnest money agreement, and the broker's drafting of the earnest money agreement. *Edmonds*, 87 Wn. App. at 855; *see also Brown v. Johnson*, 109 Wn. App. 56, 58-59, 34 P.3d 1233 (2001) (discussing *Edmonds*). The same facts do not obtain here. Boguch does not claim that Landover, by posting an inaccurate depiction of the property boundary on the Internet, breached a particular provision of the contract or failed to perform its obligation to advertise his property for sale. He contends only that Landover breached the duty of care it owed to him under statute and the common law.

¶41 A claim that a Realtor breached his or her professional duties to a seller is not an action on a contract unless

the seller claims that the Realtor's omission "violated a specific contractual undertaking." *G.W. Constr.*, 70 Wn. App. at 366. A Realtor has a common law and a statutory duty to exercise reasonable care in representing a seller's interests. RCW 18.86.030(1), .040(1), .110. This duty exists regardless of any contractual provision. The determination of whether Landover breached this duty does not require examination of the listing agreement, making the contract ancillary to the dispute. The contractual relationship may have given rise to the Realtors' duties to Boguch, but their duties are defined by the common law and by statute, not by the contract. Therefore, Boguch's negligence claims are not "on the contract." Accordingly, the trial court erred to the extent that it awarded attorney fees to Landover for prevailing on Boguch's negligence claims. Having concluded that Landover was not entitled to an award of fees for defending against Boguch's tort claims, we must discern the proper remedy for this error.

## IV

¶42 Boguch asserts that the trial court erred in awarding attorney fees to Landover because Landover failed to segregate the time its attorneys spent defending against Boguch's breach of contract claim from the time its attorneys spent defending against the tort claims. He is correct.

¶43 The amount of a fee award is discretionary, and we will overturn an award only for manifest abuse of discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. *Allard v. First Interstate Bank of Wash., NA*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989) (quoting *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984)).

¶44 The general rule is that "[i]f attorney fees are recoverable for only some of a party's claims, the award must properly reflect a segregation of the time spent on

issues for which fees are authorized from time spent on other issues." *Mayer v. City of Seattle*, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000). A trial court need not segregate time, however, "if it determines that the various claims in the litigation are 'so related that no reasonable segregation of successful and unsuccessful claims can be made.' " *Mayer*, 102 Wn. App. at 80 (quoting *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994)). A "court is not required to artificially segregate time . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." *Etheridge v. Hwang*, 105 Wn. App. 447, 461, 20 P.3d 958 (2001) (citing *Blair v. Wash. State. Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987)). The party claiming an award of attorney fees has the burden of segregating its lawyer's time. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004) (citing cases).

¶45 The exception to the rule requiring segregation of time does not apply herein. The listing agreement provides for an award of fees only for claims brought to enforce a term of the agreement. As discussed above, the existence of the agreement gives rise to statutory and common law duties of professional care that Landover owed to Boguch, but the contract is not the basis of recovery for Boguch's negligence claims. Whatever the nature of Boguch's breach of contract claim,[6] it is not so intertwined with his negligence claims as to warrant an application of the exception to the segregation rule. Indeed, Boguch's negligence claims constitute actions in tort and not on the contract because they may be resolved without reference to the specific terms of the listing agreement.

¶46 Landover's explanation as to why it was unable to segregate its attorneys' time was predicated on the misunderstanding that Boguch's tort claims were actions on the

---

[6] Boguch acknowledges in his opening briefing that he was not sure whether he had a viable contract claim but included the claim out of an abundance of caution so as not to waive it.

contract. The trial court erred in accepting this explanation. Accordingly, vacation of the fee award and remand for segregation and recalculation is required.

## V

¶47 Finally, each of the parties requests an award of attorney fees on appeal. None is entitled to such an award. This appeal does not concern claims brought to enforce the terms of the listing agreement.

¶48 Affirmed in part and reversed and remanded in part.

ELLINGTON, J., and AGID, J. PRO TEM., concur.