# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LINCOLN BEAUREGARD and
LESLIE BEAUREGARD, a marital
couple,

    Appellants/Cross-Respondents,

v.

ANNA RILEY, an individual,

    Respondent/Cross-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 77431-0-I consolidated with
No. 77501-4-I


DIVISION ONE


PUBLISHED OPINION


FILED: June 24, 2019

MANN, A.C.J. — Lincoln and Leslie Beauregard appeal the summary judgment dismissal of their claims against their former real estate agent, Anna Riley, for negligence, breach of statutory real estate broker duties, and violations of the Washington Consumer Protection Act (CPA).[1] The Beauregards are unable to establish that Riley's actions were the proximate cause of their claimed injuries. Accordingly, we affirm dismissal of their claims.

Riley cross-appeals the trial court's determination that Riley owed and breached a statutory duty to communicate a rental inquiry to the Beauregards. Riley did not have a duty to communicate rental inquiries under RCW 18.86.030(1)(c). Therefore, we reverse the trial court's conclusion to the contrary.

---

[1] Ch. 19.86 RCW.

I.

The Beauregards retained Riley to list and sell their property in Bellevue, Washington. Riley is a realtor with Windermere Real Estate/East, Inc. in Bellevue. During Riley's initial meeting with the Beauregards at their Bellevue home, the Beauregards mentioned they were also considering another real estate broker. Ultimately the Beauregards chose Riley because she estimated the property could be listed at $2,488,000, higher than the other agent's estimate. Riley recalls merely "shar[ing] with them that other clients . . . were buying a similar sized home one block over that was listed at $2,488,000" and offered that amount as an example, only after the Beauregards insisted on her opinion. The Beauregards maintain that Riley inflated the price to induce them to enter the Exclusive Sale and Listing Agreement (the Listing Agreement).

Ms. Beauregard told Riley that, if they did not get offers within their desired price range, they were also interested in renting their property. Riley concedes this alternative was discussed, but the Listing Agreement contracts Riley to "sell" the property, and specifically indicates that the "[f]irm need not submit to Seller any offers to lease, rent, execute an option to purchase, or enter into any agreement other than for immediate sale of the Property."

The parties signed the Listing Agreement on November 11, 2015. The Listing Agreement did not include a list price, but listed the property as viewable by "Appointment," "Call Listing Office," and through the "Multiple Listing Service (MLS) Keybox." Riley also listed the property as owner-occupied despite it being vacant because for "premier properties," Riley prefers to go to the property before a showing,

turn on the lights and heat, discuss key features of the home with the buyer's broker, and ensure the doors are locked after the showing. Additionally, Riley maintains that the property was not truly vacant because some of the Beauregards' furniture was present, and a vacant property is more susceptible to theft. The Beauregards maintain that Riley never fully explained to them that the property was listed as owner-occupied or as viewable by appointment, and had they known, the Beauregards would have never agreed to those terms. Those terms, however, were clearly listed in the Listing Agreement signed by the Beauregards.

On December 4, 2015, Riley e-mailed the Beauregards, recommending a list price between $1,950,000 and $2,150,000. Ms. Beauregard replied that she thought they had discussed a higher starting price range. Riley arrived at the suggested list price after conducting market research, which included two comparable properties in the same neighborhood. The first was listed for $2,488,000, but sold for $2,285,000. The second was listed for $2,249,000, but sold for $2,175,000. The property is a stacked three level floorplan, lacking an open floorplan, and with recent market preference trending towards open floorplans, Riley suggested a lower list price to compensate for the market trends. The Beauregards disagreed with Riley's recommendation and the property was listed for $2,288,000 with a $5,000 "paint/deck stain credit" and went active on December 9, 2015.

The parties characterize the discussions about listing the property over the holiday period differently. The Beauregards maintain they contacted Riley about delisting the property over the holiday season, but Riley never responded because she was vacationing in France. Riley maintains that there was less inventory on the market,

and listing over the holiday period would capitalize on buyers trying to relocate before the New Year.

During the months following the initial listing, Riley's office hosted at least 18 open houses at the property. No prospective buyers submitted offers during that period. The Beauregards contend that the lack of offers was because Riley failed to follow-up with prospective buyers and used old photographs in the listing. At several points during her representation, Riley recommended that the Beauregards drop the list price because other nearby properties had recently lowered their prices and attracted buyers. On February 3, 2016, the Beauregards agreed to reduce the price to $2,173,000, stating "[w]e had always felt the 2.28 was ambitious, but wanted to try it." Riley recommended a further price reduction on March 20, 2016, to $1,998,000, but the Beauregards disagreed.

On March 6, 2016, the Beauregards notified Riley they wanted to switch real estate agents because they felt Riley was not following up with prospective buyers and had too many other listings in the Bellevue area. Riley convinced the Beauregards to give her a second chance. Riley and the Beauregards made several changes to the property and updated the listing photos, which showcased the re-sodded backyard, the exterior paint job, and updated interior photos.

Ultimately, the Beauregards terminated their Listing Agreement with Riley in April 2016, and entered a new agreement with Nancy Klinck. The property sold on August 17, 2016 for $1,850,000.

The Beauregards filed their complaint alleging Riley breached statutory duties, was negligent, and violated the CPA. The Beauregards advanced a theory that Riley's

cumulative breaches caused their property to remain on the market for too long, leading to low offers from prospective buyers. The Beauregards claimed that Riley fraudulently induced them to enter the Listing Agreement by inflating the value of their property to $2,488,000, which was an unfair and deceptive act under the CPA.

During discovery, the Beauregards recovered an e-mail inquiry from Mark Williams, another realtor with Windermere, sent to Riley on April 6, 2016. Williams inquired whether the Beauregards would be interested in renting as opposed to selling because he had a client looking to move in mid-June from San Francisco, and rent a 2000+ sq/ft house for $3,500 a month. Riley replied that the Beauregards were not interested in renting the property. Ultimately, the prospective renter never rented a property in Bellevue, and stayed in a hotel only for a couple of months before moving back to San Francisco. The Beauregards contend that Riley was required by RCW 18.86.030(1)(c) to inform them of this "offer" to rent their property, failed to do so, and if this "offer" was conveyed, they would have accepted.

Riley moved for summary judgment. In response, the Beauregards retained Lawand Anderson, a realtor and attorney, as an expert. The Beauregards filed a cross-motion for summary judgment. Riley filed a motion to strike the declaration of Anderson, contending Anderson was not qualified as an expert and her opinion was based on speculation.

The trial court denied the motion to strike, indicating "the basis of speculation may be argued as part of the summary judgment motion." The trial court granted Riley's motion for summary judgment as to the Beauregards' CPA claim and negligence claim, but denied summary judgment as to the Beauregards' statutory duties claim,

finding Riley had a duty to convey the rental inquiry and breached it, but reserved further ruling on causation and damages.

Riley filed a second motion for summary judgment on the issue of causation, contending the Beauregards were unable to prove that Riley proximately caused the Beauregards' claimed injuries. The trial court granted Riley's second motion for summary judgment and dismissed all of the Beauregards' claims.

The Beauregards appeal the trial court's grant of summary judgment in favor of Riley. Riley cross-appeals the trial court's finding that she owed the Beauregards a duty under RCW 18.86.030(1)(c) to transmit the rental inquiry and breached that duty. Riley also appeals the trial court's consideration of the Beauregards' expert declaration.

II.

Common to each of the Beauregards' claims is the issue of whether Riley's actions proximately caused the Beauregards' claimed injuries. The Beauregards contend the trial court erred in granting summary judgment because they presented sufficient evidence to establish an issue of material fact for proximate causation. We disagree.

We review a trial court's grant of summary judgment de novo, considering "all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law." Keck, 184 Wn.2d at 370. Mere allegations or conclusory statements of fact that are unsupported by the evidence

are insufficient to show a genuine issue. Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

When the moving party is the defendant, it may meet its burden of showing there is no dispute of material fact by "pointing out that there is an absence of evidence to support an essential element of the plaintiff's claim." Boguch v. Landover Corp., 153 Wn. App. 595, 609, 224 P.3d 795 (2009). "To avoid summary judgment, the plaintiff must make out a prima facie case concerning the essential element of its claim." Boguch, 153 Wn. App. at 609. If the plaintiff is unable to present a dispute of material fact concerning an essential element that it bears the burden of proof at trial, the trial court should grant the motion. Boguch, 153 Wn. App. at 609.

Real estate brokers owe the statutory duties listed in RCW 18.86.030 to "all parties to whom the broker renders real estate brokerage service." In 2013, the legislature amended RCW 18.86.110 in light of the Supreme Court's holding in Jackowski v. Borchelt that real estate brokers owed clients common law fiduciary duties in addition to the statutory duties. 174 Wn.2d 720, 732-33, 278 P.3d 1100 (2012). The amendment makes clear that "[t]he duties under this chapter are statutory duties and not fiduciary duties. This chapter supersedes the fiduciary duties of an agent to a principal under the common law." RCW 18.86.110.

To demonstrate that the defendant's breach was the proximate cause of the plaintiff's injury, the plaintiff must demonstrate both cause in fact and legal causation. Boguch, 153 Wn. App. at 609 (citation omitted). Cause in fact is established by showing that "but for" the defendant's breach, the plaintiff's alleged injury would not have occurred. Boguch, 153 Wn. App. at 609. Legal causation relates to the question

of duty, and addresses how far to extend a defendant's responsibility, when despite being the cause in fact of the plaintiff's injury, the defendant's actions are either too remote or other policy considerations suggest cutting off liability. Hertog v. City of Seattle, 138 Wn.2d 265, 282-83, 979 P.2d 400 (2009) (citation omitted).

The causation analysis under the CPA is the same analysis as cause in fact. The Beauregards must show that "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 83, 170 P.3d 10 (2007).

Both parties argue Boguch is analogous. In Boguch, this court found that the plaintiff had not met his burden of production on the issue of causation. Boguch, 153 Wn. App. at 612. The realtors in Boguch breached their duty by including in the listing, a picture that inaccurately depicted the boundary of the property. Boguch, 153 Wn. App. at 612. The plaintiff identified a prospective buyer and argued the buyer would have purchased the property but for the realtors' breach. Boguch, 153 Wn. App. at 612.

The prospective buyer, however, had multiple other reasons for not purchasing the property, including the property's general location, the direction of the view, and the slope of the land. Boguch, 153 Wn. App. at 612. The court determined that there was an absence of evidence that, but for the realtors' breach, the property would have sold within a certain price range. Boguch, 153 Wn. App. at 612. In making this determination, the court concluded that, "other than the eventual buyers, only one individual, Bennett, expressed even the slightest interest in purchasing the property." Boguch, 153 Wn. App. at 612. Thus, it was not only "speculative as to whether there was in fact a prospective buyer who would have purchased Boguch's property but it

No. 77431-0-I/9

[was] also speculative as to whether such a prospective buyer was dissuaded from purchasing the property because of the inaccurate posting." Boguch, 153 Wn. App. at 612.

Under Boguch, the Beauregards must show there was a prospective buyer who would have been willing to purchase the property in their desired price range, but for Riley's negligence. See Boguch, 153 Wn. App. at 613. Similarly to Boguch, the Beauregards' theory "rests on the assumption that unknown prospective buyers who would have purchased the property either never considered it because their agents decided not to show it to them or must have had misgivings about the property based on the length of time it was on the market." Boguch, 153 Wn. App. at 613. In Boguch, the record was insufficient to show that a generalized negative perception of homes on the market for long periods of time was "in fact held by any identified prospective buyer who considered Boguch's property or by such a prospective buyer's agent." Boguch, 153 Wn. App. at 613. Ultimately, the court concluded that a trier of fact could not "reasonably infer that Boguch would have obtained a result different from the terms of the eventual sale without speculating about other essential facts." Boguch, 153 Wn. App. at 613.

Here, the Beauregards allege 10 ways Riley breached her duty as their agent, but fail to identify a prospective buyer who would have been willing to purchase the Beauregards' property within their desired price range—but for Riley's negligence.[2] The

---

[2] The Beauregards argue Riley breached her duty by:
(1) inducing them to enter the listing agreement dated November 11, 2015 by way of negligent pricing advice by proposing a value of $2,400,000, (2) advising them to list their home at an unmarketable value of $2,288,000 and bad pricing thereafter, (3) failing to clearly discuss the advertised listing terms including orally clarifying that other agents

Beauregards also identify negative sentiments held by people who viewed the property, but the Beauregards cannot identify in the record any potential buyer, including the ultimate buyer, who would have made an offer within the Beauregards' price range, but for Riley's breaches.

Thus, under Boguch, the Beauregards have failed to establish proximate causation, an essential element to their negligence, statutory duty, and CPA claims.

III.

Riley cross-appeals and contends that the trial court erred when it found that Riley had a duty under RCW 18.86.030(1)(c) to communicate a rental inquiry to the Beauregards. We agree.

We review issues of statutory construction de novo. State v. Evans, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). "When interpreting a statute, our fundamental objective is to determine and give effect to the intent of the legislature." State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) (citation omitted). The court's analysis begins by looking to the text of the statutory provision, the context in which the provision is found, related provisions, and the statutory scheme as a whole. Sweany, 174 Wn.2d at 914.

The statutory duty to convey all "written offers, written notices and other written communications" is triggered once a broker is rendering "real estate brokerage services." See RCW 18.86.030(1)(c). As discussed above, the amendment to chapter

would be informed of the suggestion for appointment, (4) informing other agents that she should be contacted prior to any viewings, (5) recommending that the Beauregards list their home over the dormant holiday season, (6) failing to respond to the Beauregards inquiry of December 21, 2015 about de-listing the home over the holidays, (7) utilizing old photos of the 2013 listing that were not representative of the home at the time of current marketing, (8) failing to follow up with interest [sic] buyers in the spring of 2016, (9) failing to inform the Beauregards of the April 6, 2016 offer to rent their home for a 2-years [sic] lump sum cash payment, and (10) elevating her own financial incentives over and above the Beauregards express and/or implied goals.

18.86 makes clear that "[t]he duties under this chapter are statutory duties and not fiduciary duties. This chapter supersedes the fiduciary duties of an agent to a principal under the common law." RCW 18.86.110.

At issue in this appeal is the duty described in RCW 18.86.030(1)(c), which imposes statutory duties on real estate brokers:

> (1) Regardless of whether a broker is an agent, the broker owes to all parties to whom the broker renders real estate brokerage services the following duties, which may not be waived: . . .

> (c) To present all written offers, written notices and other written communications to and from either party in a timely manner, regardless of whether the property is subject to an existing contract for sale or the buyer is already a party to an existing contract to purchase.

Brokers owe these duties "to all parties whom the broker renders real estate brokerage services." RCW 18.86.030. "Real estate brokerage services" is defined as "the rendering of services for which a real estate license is required under chapter 18.85 RCW." Chapter 18.85, which governs real estate licensure, defines "real estate brokerage services" to mean "any of the following services offered or rendered directly or indirectly to another, or on behalf of another for compensation or the promise or expectation of compensation." RCW 18.85.011(17). Thus, while the statute explains that the duties are not waivable, they are owed when only a broker is acting for "compensation or the promise or expectation of compensation."

To ascertain the scope of Riley's agency we must look to the Listing Agreement to determine the compensation Riley expected to receive for her services. The Listing Agreement defines "sell" to include a "contract to sell; an exchange or contract to

exchange; an option to purchase; and/or a lease with option to purchase." "Sell" is used in the commission section of the Listing Agreement as follows:

> COMMISSION. If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready, willing, and able to purchase the Property on the terms in this Agreement, Seller will pay . . . Firm a commission of 6% of the sales price. . . . Further, if Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or through Firm, during the Listing Term, Seller will pay Firm the above commission.[3]

By the terms of the Listing Agreement, "selling" includes "leasing with option to purchase." Thus, the scope of the Listing Agreement included leasing, but only when coupled with an option to purchase.

In the e-mail Riley received from Williams, the e-mail specifically asked if the Beauregards would be interested in renting their house, as opposed to selling.[4] The e-mail communication does not fall within the "real estate brokerage services" that the Beauregards contracted with Riley because Williams clearly indicated that the interested party only wanted to rent the property. Since Riley's scope of agency was limited to selling the property, Riley was not expecting compensation from renting the

---

[3] (Emphasis added.)
[4] The e-mail stated:
Shot in the dark but wondering if your client at 10052 NE 30th Place, Bellevue 98004 might be interested in renting their house as appose [sic] to selling, I have a friend moving from SF in mid June looking for a rental to get acquainted with the area. He and his family are looking in West Bellevue area like Clyde Hill, Medina, Hunts point, Yarrow point and surrounding.

$3500/mo is his target monthly
2000+ sq/ft
House
2+ bedrooms
He is willing to sweeten the offer by paying cash in full for a year if needed and looking for 1-2 year.

property. Therefore Riley did not have a duty to communicate the rental inquiry under RCW 18.86.030(1)(c).

We affirm dismissal of the Beauregards' claims. We reverse the trial court's finding that Riley had a statutory duty to communicate the rental inquiry and breached that duty.[5]

_Mann, A.C.J._

WE CONCUR:

_Leinweber, J._          _Appelwick, C.J._

---

[5] Since we affirm the trial court's grant of summary judgment on causation, we decline to reach Riley's cross-appeal on whether the trial court erred by considering Anderson's expert declaration.